T.C. Summary Opinion 2007-132

UNITED STATES TAX COURT

WEBBER DOUGLAS GILMER, Petitioner,
AND MINNIE PAYTON, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MINNIE RUTH PAYTON, f.k.a. MINNIE R. GILMER, Petitioner,
AND WEBBER DOUGLAS GILMER, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 12669-05S, 18048-05S.     Filed July 30, 2007.

Webber Douglas Gilmer, pro se.

Minnie Payton, pro se.

Charles J. Graves, for respondent.

GOLDBERG, Special Trial Judge:  These consolidated cases
were heard pursuant to the provisions of section 7463 of the
Internal Revenue Code in effect at the time the petitions were

filed.  Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In a joint notice of deficiency mailed to petitioners, respondent determined a deficiency in petitioners' 2001 Federal income tax of $11,747 and an accuracy-related penalty of $2,349.40 pursuant to section 6662(a).

Each petitioner filed a separate petition.  Webber Douglas Gilmer's (petitioner) petition seeks a redetermination of the deficiency and the accuracy-related penalty, and his amended petition seeks relief from joint and several liability on their joint return for 2001 pursuant to section 6015.  Minnie Ruth Payton's (Ms. Payton) petition also seeks relief from joint and several liability on their joint return for 2001.  Each petitioner filed a notice of intervention in the other's case.

When these cases were called for trial, the parties in each filed a stipulation of settled issues.  In the stipulation, petitioners stipulated a deficiency for 2001 in the amount of $5,722, and an accuracy-related penalty of $1,144.  Further, Ms. Payton, at trial, conceded her claim for relief from joint and

several liability, both in her case and as intervenor in Mr. Gilmer's case.

After the stipulations and Ms. Payton's concession, the remaining issue before this Court is whether petitioner is entitled to relief from joint and several liability under section 6015(b), (c), or (f).

## Background

Some of the facts are stipulated. The stipulated facts and the exhibits received into evidence are incorporated herein by reference. At the time that his petition was filed, Mr. Gilmer resided in Kansas City, Missouri.

During the taxable year in issue, Mr. Gilmer was married to Ms. Payton. There were no children born of the marriage. Petitioner and Ms. Payton separated sometime in 2001 and divorced in 2004. Petitioner is employed as a schoolteacher.

Petitioner and Ms. Payton filed a joint 2001 Federal income tax return. Mr. Gilmer prepared the joint income tax return reporting all sources of income, itemized deductions, and Schedule C, Profit or Loss From Business, and Schedule E, Supplemental Income and Loss. On their joint return, petitioners reported losses on Schedules C and E. The Schedule C business activity, known as World Works Diversified, encompassed two separate lines of business: the selling of hats, flags, and other Western-themed novelties, and an educational consulting activity.

The Schedule E activity related to rental property held by petitioners in Grandview, Missouri. In the notice, respondent disallowed certain claimed Schedule C and E expenses, disallowed certain itemized deductions claimed on Schedule A, Itemized Deductions, and determined that petitioners had failed to report income received from the aforementioned rental property and an annuity.

In his petition, Mr. Gilmer requested relief under section 6015 on the grounds that his wife "used voodoo to trigger an IRS audit of their 2001 tax return" and that "she promised to have [him] killed" if he did not sign the joint return that "he prepared with her assistance." Although petitioner has fully stipulated a deficiency of $5,722,[1] as well as the imposition of the accuracy-related penalty, for purposes of his request for relief under section 6015, he disputes his knowledge "of the unreported income at issue in this case."

## Discussion

Generally, spouses filing joint Federal income tax returns are jointly and severally liable for the taxes due thereon. Sec. 6013(d)(3). Section 6015 provides three avenues for relief from that liability to a taxpayer who has filed a joint return: (1) Section 6015(b) allows relief for understatements of tax

---

[1] We note that this amount is slightly less than one-half of the total amount of deficiency. Although the record is devoid of the reasoning behind this stipulation, petitioners each stipulated a deficiency in this amount.

attributable to certain erroneous items on a return; (2) section 6015(c) provides relief for a portion of an understatement of tax to taxpayers who are separated or divorced; and (3) section 6015(f) more broadly confers on the Secretary discretion to grant equitable relief to taxpayers who otherwise do not qualify under section 6015(b) or (c).

The first avenue for relief is section 6015(b). Under section 6015(b), the Court may grant a taxpayer full or apportioned relief from joint and several liability for an understatement of tax on a joint return attributable to erroneous items of the other spouse if the taxpayer establishes that in signing the return he "did not know, and had no reason to know" of the understatement. Sec. 6015(b)(1)(C), (2).

At the outset, we note that petitioner testified in detail with respect to the Schedule C business activity reported on the 2001 joint return. With respect to the remaining items that respondent disallowed in the notice (Schedules C and E expenses, certain Schedule A deductions), petitioner testified that he was aware of all of the items listed as expenses or claimed as itemized deductions on the 2001 joint return.

Petitioner argues that he is entitled to relief under section 6015 because Ms. Payton failed to disclose to him income received from all of the couple's Schedule C business activities in 2001, and that he, in turn, did not report that income on

their joint return for that year.  However, petitioner's testimony is not relevant to the matter before this Court, as the unreported income stems from petitioners' rental property and an annuity and not, as petitioner believes, from the Schedule C activity.

Mr. Gilmer testified as to the couple's business activity during the year in issue.  He admitted that he kept records for all World Works Diversified activities and knew all of the general details with respect to these activities with the exception of the educational consulting activity, which he claimed was under the sole purview of Ms. Payton.  As previously stated, petitioner testified that he prepared the 2001 tax return in question and reported all of the expenses and claimed deductions at issue in these cases.  The detailed information that petitioner provided this Court about the couple's business activities in 2001 illustrates to us that petitioner was, in fact, aware of all income from the couple's various business endeavors.

Ms. Payton credibly testified that Mr. Gilmer was aware of and participated in all of the couple's business endeavors during the year in issue.  We believe Ms. Payton's testimony that petitioner had knowledge and overall oversight of all the couple's business activity and records pertaining to such activity in 2001.

Simply put, petitioner was fully aware of all aspects of the couple's business activity in 2001. Accordingly, because petitioner knew and had reason to know of all of the claimed business expenses and income related to the Schedule C activity for the year in issue, we hold that he is not entitled to relief under section 6015(b).

The second avenue for relief from joint and several liability lies in section 6015(c). Section 6015(c) affords proportionate relief to the requesting spouse through allocation to the responsible party. Generally, this avenue of relief allows a spouse to elect to be treated as if a separate return had been filed. Rowe v. Commissioner, T.C. Memo. 2001-325. To be eligible for relief under section 6015(c), the requesting spouse must no longer be married to, or must be legally separated from, the individual with whom the tax return was filed and must have elected the applicability of section 6015(c) not later than 2 years after the date on which collection activity began. Sec. 6015(c)(3). Furthermore, and perhaps most important to the present facts, relief under section 6015(c) is not available to a taxpayer if it is shown that the taxpayer had actual knowledge when signing the return of any "item" giving rise to the deficiency. Sec. 6015(c)(3)(C).

Petitioner is now divorced from Ms. Payton, and the divorce decree was finalized before petitioner filed a petition with this

court. Accordingly, the remaining issue is whether petitioner had no actual knowledge of the income item leading to the underpayment.

Based on our previous discussion of the facts and the evidence presented in these cases, we believe that petitioner had actual knowledge of all items of income received by the couple in 2001. Moreover, we again reiterate that petitioner did not deny his knowledge of the items of unreported income at issue in these cases.

As to the other items at issue, petitioner stated that he had knowledge of the deductions claimed on the Schedule A, and expenses reported on the Schedules C and E, as well as all activity and accounts pertaining to World Works Diversified. The majority of the deficiency at issue stems from respondent's denial of the expenses reported on Schedule C. Again, petitioner testified that he knew about and believed in the veracity of all items reported on the Schedule C for 2001 when he prepared it. Therefore, because petitioner had actual knowledge of all of the items that respondent disallowed and because he prepared the 2001 joint return at issue with this knowledge, we find that he is not eligible for relief under section 6015(c).

Because petitioner is not eligible for relief under section 6015(b) and (c), we finally consider the equitable relief provisions of section 6015(f). Section 6015(f) provides, in

part, that a taxpayer may be relieved from joint and several liability if it is determined that, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for the unpaid tax and relief is not available under section 6015(b) or (c).

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying Rev. Proc. 2000-15, 2000-1 C.B. 447, that are to be used in determining whether it is inequitable to hold a requesting spouse liable for all or part of the deficiency.[2] Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, provides the following seven threshold conditions that must be satisfied before a request for relief will be considered: (1) The requesting spouse filed a joint return for the year for which relief is sought; (2) relief is not available under section 6015(b) or (c); (3) the application for relief is made no later that 2 years after the date of the Commissioner's first collection activity; (4) no assets were transferred between spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualifying assets to the requesting

_____

[2]Rev. Proc. 2000-15, 2000-1 C.B. 447, was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, and is effective as to requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, as to which no preliminary determination letter had been issued as of that date. Petitioner's application for relief was filed after Nov. 1, 2003, on July 11, 2005.

spouse; (6) the requesting spouse did not file or fail to file the return with fraudulent intent; and (7) absent enumerated exceptions, the liability from which relief is sought is attributable to an item of the nonrequesting spouse. Respondent here concedes that petitioners meet these seven threshold conditions.

Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298, then lists the eight nonexclusive factors that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the deficiency, and full or partial equitable relief under section 6015(f) should be granted. These nonexclusive factors include whether: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship without relief; (3) the requesting spouse did not know or have reason to know of the item giving rise to the deficiency; (4) the nonrequesting spouse had a legal obligation to pay the outstanding liability; (5) the requesting spouse received a significant benefit from the item giving rise to the deficiency; (6) the requesting spouse has made a good faith effort to comply with income tax laws in subsequent years; (7) the requesting spouse was abused by the nonrequesting spouse; and (8) the requesting spouse was in poor mental or physical health when

signing the return or requesting relief. Rev. Proc. 2003-61, sec. 4.03(2), further provides that no single factor will be determinative, but that all relevant factors will be considered. We will now consider petitioner's request in the light of these relief factors.

In this case, petitioner divorced Ms. Payton in 2000; therefore, he satisfies the first factor. With respect to the second factor, petitioner must show that he would be unable to pay basic reasonable living expenses if relief were not granted. See Monsour v. Commissioner, T.C. Memo. 2004-190. Being unable to pay basic reasonable living expenses would amount to economic hardship. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. Petitioner has alleged that denial of his request for relief would result in economic hardship for his family "for the next 140 years." He is gainfully employed as a schoolteacher and has no dependents. The Court fails to see, and petitioner has neither raised as an issue nor established, that he would suffer economic hardship if his request for relief from joint liability were denied.

As to the third factor, as discussed earlier, petitioner had actual knowledge of all of the claimed Schedules C and E business and rental expenses, rental income, and itemized deductions when he completed the 2001 income tax return. Rev. Proc. 2003-61, sec. 4.03, specifically states that actual knowledge by the

requesting spouse of the item giving rise to the deficiency is a strong factor weighing against relief. This strong factor may be overcome only if the factors in favor of equitable relief are particularly compelling. We conclude that they are not.

As to the fourth factor, the Judgment of Dissolution of Marriage states that petitioner "shall pay * * * and hold [Ms. Payton] harmless from the payment of * * * any federal, state, and local tax obligations * * * for the joint return for the tax year 2001." Petitioner asks this Court to disregard this language, however, on the grounds that "there is no evidence that [he] entered in the correct numbers into Turbo Tax" and that "he even signed the return." First, we fail to see how petitioner's arguments are relevant to the obligation imposed on him by the Judgment. Moreover, petitioner's statements contradict his admission that he prepared and signed the return at issue. Second, under Rev. Proc. 2003-61, sec. 4.03 (2)(a)(iv), if a divorce decree or judgment places an obligation to pay taxes on the requesting spouse, then that fact weighs against granting him relief. Here, the Judgment specifically designates responsibility for any deficiency for the couple's 2001 Federal income tax return to petitioner, and we find that this factor strongly favors denying petitioner relief.

As to the fifth factor, petitioner received a substantial benefit when he received a refund in the amount of $8,861 for

2001.  When specifically questioned about the refund at trial, petitioner neither confirmed nor denied that he had received the refund.  Petitioner included his personal checking account number on the return for direct deposit of the refund.  Petitioner provided no credible evidence to show that Ms. Payton either had access to or withdrew the refund from this account.  Moreover, we find Ms. Payton's testimony credible that the refund was deposited to petitioner's account alone and that she neither had access to this account nor did she withdraw the funds in any other way.  The Court is therefore convinced that the substantial benefit factor weighs against granting relief.

The sixth factor concerns compliance with income tax laws and, particularly, the good faith efforts of the requesting spouse in subsequent years.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.  With respect to this inquiry, there is no evidence outside of the year at issue.  Accordingly, we find this factor neutral to our decision.

As to the seventh factor, abuse, petitioner has maintained from the inception of his case that he is entitled to relief based solely on the numerous wrongs allegedly done to him by Ms. Payton including:  Mental abuse, physical abuse, extortion, bribery, voodoo, falsification of police reports, kidnaping, larceny, and theft.  Contrary to petitioner's statements, Ms. Payton testified that it was petitioner, not she, who was

abusive, and that petitioner had been arrested and put on probation as a result of his assaulting her.  Petitioner admitted that he had been put on probation for assaulting Ms. Payton and did not submit any evidence showing that the probation imposed was improper.  Petitioner failed to credibly corroborate any of the allegations which he made regarding Ms. Payton's behavior, and he did not explain how his accusations related to the deficiency at issue.  Finally, we note that there is nothing in the Judgment of Dissolution of Marriage relating to abuse on the part of either party.  Accordingly, we find that the lack of credible evidence on the issue of abuse weighs strongly against granting relief.

Finally, as to the final factor, whether the requesting spouse seeking relief was in poor mental or physical health when signing the return, there is nothing in the record to show that petitioner suffered from any ailment that would have impacted upon his ability to pay his Federal income tax obligation for the year in issue.  As this factor weighs only in favor of, and not against, relief, we consider it neutral to our present inquiry. Id. sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

Accordingly, since none of the relevant factors identified in the pertinent revenue procedure weigh in favor of granting

relief, the Court holds that there was no abuse of discretion by respondent in denying relief to petitioner under section 6015(f).

Decisions will be entered in each case for respondent in the amounts of $5,722 for the deficiency and $1,144 for the accuracy-related penalty.